THE STATE OF OHIO, APPELLEE, *v.* PAYNE, APPELLANT.

[Cite as *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642.]

(Nos. 2006–1245 and 2006–1383—Submitted May
22, 2007—Decided September 26, 2007.)

O'CONNOR, J.

{¶ 1} This appeal comes to us in the wake of our decision in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Foster,* following *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, held that statutes that required "judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant" violated a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution. *Foster,* paragraph one of the syllabus. The issue confronting us now is whether, when sentencing occurred after *Blakely,* failure to object at trial to a sentence that violates *Blakely* forfeits the issue on appeal. For the reasons that follow, we answer the question in the affirmative and affirm the judgment of the court of appeals.

## I. Background

{¶ 2} On August 11, 2003, the Franklin County Court of Common Pleas Grand Jury returned a seven-count indictment against appellant, Ronald Payne, charging him with one count each of aggravated burglary and kidnapping, both felonies

of the first degree; four counts of rape, felonies of the first degree; and one count of felonious assault, a felony of the second degree. The aggravated-burglary and kidnapping charges included three-year firearm specifications.

{¶ 3} Between Payne's indictment and trial, the Supreme Court of the United States released *Blakely*.

{¶ 4} Payne's case went to trial in 2005, but one day into the trial, Payne withdrew his plea of not guilty and entered a plea pursuant to *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, to aggravated burglary, kidnapping, rape, and felonious assault. The court nolled the gun specifications.

{¶ 5} At sentencing, the trial court imposed consecutive sentences of two years for the felonious assault, eight years for the kidnapping, and five years for each count of rape, for an aggregate sentence of 35 years. Payne never voiced an objection with the trial court regarding the sentence. However, claiming that the sentence violated his rights under the Sixth Amendment and *Blakely*, Payne appealed to the Tenth District Court of Appeals. The state maintained that Payne had never raised this objection with the trial court and that therefore, the appellate court should review the error under plain-error analysis.

{¶ 6} In 2006, we held that those portions of Ohio's sentencing scheme requiring judicial fact-finding were unconstitutional. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one, three, and five of the syllabus. We severed the unconstitutional sections from the constitutional sections. Id., paragraphs two, four, and six of the syllabus.

{¶ 7} The appellate court initially reversed and remanded Payne's sentence on the authority of *Foster*. *State v. Payne* (Mar. 31, 2006), Franklin App. No. 05AP–517. The state then successfully moved the court of appeals for reconsideration of its judgment. *State v. Payne*, 10th Dist. No. 05AP–517, 2006-Ohio-2552, 2006 WL 1401616, ¶ 1. Upon reconsideration, the court of appeals held that Payne "was sentenced after the [United States] Supreme Court's decision in *Blakely*, and thus, he could have objected to his sentencing based on *Blakely* and the constitutionality of Ohio's sentencing scheme. [Payne], however, did not raise such a constitutional challenge * * * in the trial court, and therefore [he] waived his *Blakely* argument on appeal." Id. at ¶ 6.

{¶ 8} The court of appeals certified a conflict between its decision and the Second District Court of Appeals decision in *State v. Miller*, 2d Dist. No. 21054, 2006-Ohio-1138, 2006 WL 574400. We determined that a conflict exists, case No. 2006–1383, and having accepted discretionary jurisdiction over Payne's appeal in case No. 2006–1245, we consolidated the cases.

## II. Analysis

### A

{¶ 9} In *Foster* and similar appellate cases,[1] we remanded a large number of cases already in the appellate phase for resentencing hearings without any mention of forfeiture. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 3–7. The remand orders were silent as to the issue currently confronting us.

{¶ 10} We recognize that this court remanded for resentencing some cases in which the initial sentencing by the trial court had occurred after *Blakely* was decided, but where the defendant had seemingly failed to object on *Blakely* grounds to the sentence imposed. See, e.g., *State v. Kendrick*, 2d Dist. No. 20965, 2006-Ohio-311, 2006 WL 202141, judgment reversed by *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 411, 2006-Ohio-2394, 848 N.E.2d 809, ¶ 19. However, this court did not then definitively resolve the issue presented by this case; thus, it is appropriate to do so now.

{¶ 11} Both Payne and the majority of Ohio's appellate districts have construed our silence as to remands as settling this issue. In doing so, they have overlooked our holding that "[a] reported decision, although a case where the question might have been raised, is entitled to no consideration whatever as settling * * * a question not passed upon or raised at the time of the adjudication." *State ex rel. Gordon v. Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E.2d 206, paragraph one of the syllabus.

{¶ 12} Thus, we are not bound by any perceived implications that may have been inferred from *Foster*. Cf. *Lopez v. Monterey Cty.* (1999), 525 U.S. 266, 281, 119 S.Ct. 693, 142 L.Ed.2d 728; see, also, *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 46.

{¶ 13} We are guided by *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. *Booker*, like *Foster*, applied to every case that was in the appellate stage. Id. at 268, 125 S.Ct. 738, 160 L.Ed.2d 621. The United States Supreme Court, however, noted that not every case would be entitled to a resentencing hearing. Instead, *Booker* instructed courts "to apply ordinary

---

1. See, e.g., *In re Ohio Criminal Sentencing Statutes Cases*, 110 Ohio St.3d 264, 2006-Ohio-4475, 853 N.E.2d 274, ¶ 2–3; *In re Ohio Criminal Sentencing Statutes Cases*, 110 Ohio St.3d 156, 2006-Ohio-4086, 852 N.E.2d 156, ¶ 3–7; *In re Ohio Criminal Sentencing Statutes Cases*, 110 Ohio St.3d 70, 2006-Ohio-3663, 850 N.E.2d 1168, ¶ 2–10; *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 518, 2006-Ohio-3254, 849 N.E.2d 985, ¶ 2–9; *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 509, 2006-Ohio-2721, 849 N.E.2d 284, ¶ 2–10; *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 411, 2006-Ohio-2394, 848 N.E.2d 809, ¶ 2–19; *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174, ¶ 2–252.

prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." Id.

{¶ 14} In heeding the dictates of *Booker*, we will address for the first time whether *Blakely* error can be forfeited.

## B

{¶ 15} Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only "[p]lain errors or defects affecting substantial rights." Crim.R. 52(B). Inherent in the rule are three limits placed on reviewing courts for correcting plain error.

{¶ 16} "First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Courts are to notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 17} The burden of demonstrating plain error is on the party asserting it. See, e.g., *State v. Jester* (1987), 32 Ohio St.3d 147, 150, 512 N.E.2d 962. A reversal is warranted if the party can prove that the outcome "would have been different absent the error." *State v. Hill* (2001), 92 Ohio St.3d 191, 203, 749 N.E.2d 274.

{¶ 18} There also exist those classes of errors that need not be analyzed using the above "limits" and are "[s]ubject to automatic reversal, 'only in a very limited class of cases.' " *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 18, quoting *Johnson v. United States*, (1997) 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718. These errors are considered structural errors because they permeate the entire " 'framework within which the trial proceeds.' " *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 309–310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Although all structural errors are by nature constitutional errors, not all constitutional errors are structural. *Chapman v. California* (1967), 386 U.S. 18, 22–23, 87 S.Ct. 824, 17 L.Ed.2d 705. As a result, some constitutional errors can be deemed nonprejudicial so long as the error is harmless beyond a reasonable doubt. Id. at 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

{¶ 19} Applying these doctrines, we first determine whether the trial court's error in sentencing Payne pursuant to the pre-*Foster* version of the sentencing statute is structural. If it is, our inquiry is at an end.

{¶ 20} Controlling our disposition on this issue is the Supreme Court's recent decision in *Washington v. Recuenco* (2006), —— U.S. ——, 126 S.Ct. 2546, 165 L.Ed.2d 466. In *Recuenco,* the court held that *Blakely* error is not structural. Id. at ——, 126 S.Ct. at 2553, 165 L.Ed.2d 466. The court reasoned that the failure to submit a sentencing factor to the jury is akin to failure to submit an element of an offense to the jury. Id. As the latter omission previously was determined not to render the entire trial fundamentally unfair, *Neder v. United States* (1999), 527 U.S. 1, 19–20, 119 S.Ct. 1827, 144 L.Ed.2d 35, it stands to reason that a *Blakely* violation should be treated identically because sentencing factors and elements of an offense are treated the same under the Sixth Amendment. *Recuenco,* —— U.S. ——, 126 S.Ct. at 2552, 165 L.Ed.2d 466. Accordingly, we follow *Recuenco* and hold that the constitutional error involved in this kind of case is not structural and should ordinarily be analyzed pursuant to Crim.R. 52 analysis.

## C

{¶ 21} Because *Blakely* was announced prior to Payne's plea and sentence, and because we conclude that the error is not structural, in failing to make a *Blakely* objection, Payne forfeited the issue for appellate purposes.

{¶ 22} At this point, we note that this case involves forfeiture rather than waiver.[2] The distinction between these two terms is critical.

{¶ 23} Waiver is the intentional relinquishment or abandonment of a right, and waiver of a right "cannot form the basis of any claimed error under Crim.R. 52(B)." *State v. McKee* (2001), 91 Ohio St.3d 292, 299, 744 N.E.2d 737, fn. 3 (Cook, J., dissenting); see, also, *United States v. Olano* (1993), 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508. On the other hand, forfeiture is a failure to preserve an objection, and because Payne failed to timely assert his rights under *Blakely,* his failure to preserve the objection must be treated as a forfeiture. Id. at 733, 113 S.Ct. 1770, 123 L.Ed.2d 508. "[A] mere forfeiture does not extinguish

---

2. The court of appeals in this case mistakenly, yet perhaps understandably, conflated waiver with forfeiture. Cf. *Freytag v. Commr. of Internal Revenue* (1991), 501 U.S. 868, 894, 111 S.Ct. 2631, 115 L.Ed.2d 764, fn. 2 (Scalia, J., concurring) ("The Court uses the term 'waive' instead of 'forfeit' * * *. The two are really not the same, although our cases have so often used them interchangeably * * *").

a claim of plain error under Crim.R. 52(B)." *McKee,* 91 Ohio St.3d at 299, 744 N.E.2d 737, fn. 3 (Cook, J., dissenting).

{¶ 24} Thus, if Payne had knowingly waived his rights, barring a finding that the error is structural, we would conclude our analysis. Because the record is devoid of any evidence that there was a waiver of the *Blakely* objection, we must apply the plain-error analysis set forth in Section B, supra, to Payne's forfeiture.

{¶ 25} No plain error occurred. Payne cannot establish that but for the *Blakely* error, he would have received a more lenient sentence. See Crim.R. 52(B). Indeed, *Foster* represents a Pyrrhic victory for Payne and other defendants affected by its holding. Although defendants were successful in arguing the unconstitutionality of the sections of the statutes that required judicial findings for the imposition of higher than minimum sanctions, we did not adopt their proposed remedy of mandatory minimum sentences. Since *Foster,* trial courts no longer must navigate a series of criteria that dictate the sentence and ignore judicial discretion.

{¶ 26} Payne, therefore, has failed to establish that he was prejudiced by the judicial fact-finding requirements. If Payne were to be resentenced, nothing in the record would hinder the trial court from considering the same factors it previously had been required to consider and imposing the same sentence or even a more stringent one.

{¶ 27} Payne mistakenly contends that our use of "void" in *Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 103, creates an exception to this analysis. In reality, void and voidable sentences are distinguishable. A void sentence is one that a court imposes despite lacking subject-matter jurisdiction or the authority to act. *State v. Wilson* (1995), 73 Ohio St.3d 40, 44, 652 N.E.2d 196. Conversely, a voidable sentence is one that a court has jurisdiction to impose, but was imposed irregularly or erroneously. *State v. Filiaggi* (1999), 86 Ohio St.3d 230, 240, 714 N.E.2d 867.

{¶ 28} Therefore, in those cases in which a trial court has jurisdiction but " ' "erroneous[ly] exercise[s] * * * jurisdiction, * * * the [sentence] * * * is not void," ' " and the sentence can be set aside only if successfully challenged on direct appeal. Id. at 240, 714 N.E.2d 867, quoting *In re Waite* (1991), 188 Mich.App. 189, 200, 468 N.W.2d 912, quoting *Jackson City Bank & Trust Co. v. Fredrick* (1935), 271 Mich. 538, 544–546, 260 N.W. 908.

{¶ 29} Applying these principles, we conclude that *Foster* addressed a situation in which the trial courts had both subject-matter jurisdiction and personal jurisdiction over a defendant. Courts prior to *Foster* had jurisdiction to impose a sentence within the statutory range after conducting the judicial fact-finding previously required by the statute. Our holding portions of R.C. 2929.14 unconstitutional rendered some pre-*Foster* sentences erroneous exercises of trial court

jurisdiction. Thus, pre-*Foster* sentences imposed after judicial fact-finding and falling within the statutory range are voidable.[3]

{¶ 30} Therefore, defendants with a voidable sentence are entitled to resentencing only upon a successful challenge on direct appeal. Because Payne forfeited the *Blakely* error, his appeal fails to establish that he should be resentenced pursuant to *Foster*.

### III. Conclusion

{¶ 31} Our ruling today adheres to the Supreme Court's growing line of jurisprudence in this area of law. In prior cases, we have applied *Blakely* and *Booker* in holding portions of Ohio's sentencing statutes unconstitutional and in subsequently providing a remedy for those statutory provisions deemed violative of the Sixth Amendment. Using *Booker* and *Recuenco* as our constitutional guideposts in addressing the issue of forfeiture is consistent with the recent developments of jurisprudence pertaining to Ohio's sentencing scheme. For the foregoing reasons, we hold that a lack of an objection in the trial court forfeits the *Blakely* issue for purposes of appeal when the sentencing occurred after the announcement of *Blakely*.

Judgment affirmed.

LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., and CUPP, J., concur in part and dissent in part.

PFEIFER, J., dissents.

_____

**LANZINGER, J., concurring.**

{¶ 32} I fully concur with the majority opinion but write to emphasize the importance of our clarification of the terms "void" and "voidable" in the sentencing context.

{¶ 33} These distinct terms have distinct consequences, as a void judgment is "a judgment that has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected at any time and any place, whether directly or collaterally," Black's Law Dictionary (8th Ed.2004) 861, and a voidable judgment is "[v]alid until annulled," id. at 1605.

{¶ 34} In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 103, we cited *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d

_____

3. It is axiomatic that imposing a sentence outside the statutory range, contrary to the statute, is outside a court's jurisdiction, thereby rendering the sentence void ab initio.

864, ¶ 23, and stated, "When a sentence is *deemed void,* the ordinary course is to vacate that sentence and remand to the trial court for a new sentencing hearing." (Emphasis added.) Instead, in referring to a sentence that could be annulled for improper exercise of the trial court's authority, we should have more clearly stated that a *voidable* sentence is, on appeal, subject to being vacated and remanded for resentencing. Sentences that are "void ab initio," meaning imposed without subject-matter jurisdiction, may be attacked on direct appeal or collaterally by means of habeas corpus. *State v. Wilson* (1995), 73 Ohio St.3d 40, 44, 652 N.E.2d 196; *Gaskins v. Shiplevy* (1995), 74 Ohio St.3d 149, 151, 656 N.E.2d 1282. In a successful challenge to a void sentence, "a court lacks the authority to do anything but announce its lack of jurisdiction and dismiss." *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 21.

{¶ 35} Cases appealed on grounds of *Foster* involve voidable, rather than void, sentences, and I agree that Payne forfeited the *Blakely* issue in not registering his objection to a nonstructural error.

---

CUPP, J., concurring in part and dissenting in part.

{¶ 36} I welcome and approve today's needed clarification of when a sentence is void and when it is merely voidable, and the legal consequences of each. I concur in that portion of the decision.

{¶ 37} The main issue to be resolved, however, is whether this court's sweeping resentencing mandate in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, should be modified by applying the traditional principles of waiver or forfeiture or whether this court should, for purposes of consistency, adhere to the *Foster* resentencing mandate now that, presumably, most defendants subject to the requirement have already been resentenced. I would adhere to the resentencing directive of *Foster* for the purpose of consistency, and I therefore respectfully dissent from that portion of the majority's decision.

{¶ 38} In *Foster,* after holding various provisions of Ohio's sentencing statutes unconstitutional under *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, this court adopted several remedies similar to those adopted in *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. However, one of the remedies in *Foster* differed from the remedies in *Booker* in a significant way.

{¶ 39} Consistent with *Booker, Foster* first adopted a severance remedy. That is, the court severed the provisions of the sentencing statutes that violated the Sixth Amendment to the United States Constitution from the remainder of the

sentencing statutes. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 93–102. Second, the court applied its holding to all cases pending on direct review, a remedy also consistent with *Booker*. Id. at ¶ 104. Third, this court ordered all cases pending on direct review "remanded to trial courts for new sentencing hearings." Id. It is the apparent scope of this third remedy that differs from *Booker*'s remedial outline.

{¶ 40} Although *Booker* applied its holding to "all cases on direct review," *Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, it did not order new sentencing hearings. Rather, the United States Supreme Court directed that federal courts, in deciding whether resentencing is necessary, "apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." Id. *Foster* did not include this directive.

{¶ 41} This distinction is a significant one and bears upon our decision in the instant case. The majority herein reasons that because *Foster* adopted remedies fashioned after those in *Booker*, the *Booker* language regarding waiver, plain error, and harmless error are also applicable here. That may be. However, the language of this court's decision in *Foster* ostensibly made *Foster* broader than *Booker* by its specific order to resentence.

{¶ 42} Resentencing has already been conducted in hundreds of criminal cases around the state based on the *Foster* directive.[4] Consistency in this matter, as in all criminal sentencing, is desirable. The majority's decision in this case, however, will result in some defendants having been granted a resentencing hearing whether or not they objected in the trial court to their initial sentence on *Blakely* grounds, while other defendants are being denied similar treatment. This lack of consistency is troubling.

{¶ 43} The resentencing ordered in *Foster* of all cases on direct review, without the *Booker* qualification, appeared to be a clear directive to trial and appellate courts. These courts have responded by undertaking or ordering new sentencing hearings. As a result, continued application of the resentencing requirement is the most consistent way of resolving the matter at hand. It is likely the most efficient way, too, considering the related claims that are sure to flow from today's decision.

{¶ 44} Because I do not find *Booker* to be controlling in light of the particular language used in *Foster*, I would not at this late date depart from the resentenc-

---

4. As the majority notes, this court remanded a large number of cases for resentencing in the months following the *Foster* decision. See majority opinion at ¶ 9 and footnote 1.

ing directive, whether overbroad or not. For these reasons, I dissent from that part of the majority's decision.

MOYER, C.J., concurs in the foregoing opinion.

---

Yeura R. Venters, Franklin County Public Defender, and Paul Skendelas, Assistant Public Defender, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellee.